IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–00267–EWN–MEH

WASON RANCH CORPORATION,

      Plaintiff,

v.

HECLA MINING COMPANY, a Delaware corporation,
HOMESTAKE MINING COMPANY OF CALIFORNIA,
a California corporation,
CHEVRON USA, INC., a Pennsylvania corporation, individually, as
parent, and as successor in interest to Chevron Resources Company, a
division of Chevron Industries, Inc., and
TY POXSON, an individual,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is an environmental law case. Wason Ranch Corporation (hereinafter "Plaintiff")

brings suit against Hecla Mining Company (hereinafter "Hecla"), Homestake Mining Company of

California (hereinafter "Homestake"), and Chevron USA, Inc., individually, as parent, and as

successor in interest to Chevron Resources Company, a division of Chevron Industries, Inc.

(hereinafter "Chevron") under the citizen suit provisions of the Resource Conservation and

Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and the Clean Water Act ("CWA"), 33

U.S.C. § 1365, for injunctive relief, civil penalties, and litigation costs. Plaintiff also asserts a

number of state tort claims against Hecla and Ty Poxson, an individual (hereinafter "Poxson").

Jurisdiction is purportedly premised upon 28 U.S.C. § 1331, federal question.

The matters now before the court are: (1) Hecla, Homestake, and Chevron's joint motion to dismiss for lack of subject-matter jurisdiction under 42 U.S.C. § 9613(h), filed November 21, 2007; (2) Hecla's "Motion for Costs, Including Attorney Fees, and for Stay of Proceedings Pursuant to Federal Rule of Civil Procedure 41(d)," filed March 12, 2007; (3) Chevron's "Motion for Costs, Including Attorney Fees, Pursuant to Federal Rule of Civil Procedure 41(d)," filed April 13, 2007; (4) Hecla, Homestake, and Chevron's motions to dismiss for failure to comply with pre-suit notice provisions of 33 U.S.C. § 1365(b), 42 U.S.C. § 6972(b), filed April 12 and 13, 2007; (5) Hecla's "Motion to Dismiss State Law Claims and to Strike Request for Exemplary Damages Alleged in Plaintiff's First Amended Complaint," filed June 13, 2007; (6) Poxson's "Motion to Dismiss First Amended Complaint," filed July 27, 2007; (7) Hecla and Homestake's motions to dismiss for failure to join necessary and indispensable parties, filed July 31, 2007 and August 13, 2007; (8) Hecla's "Motion for Leave to Supplement Designation of Responsible Non-Parties Pursuant to C.R.S. §13-21-111.5," filed February 13, 2008; and (9) Plaintiff's motion for "Preliminary Injunction," filed March 24, 2008.

## FACTS

### 1. Factual Background

#### a. Nature of Plaintiff's Claims

Plaintiff owns a guest ranch on the banks of the Rio Grande River, in Creede, Colorado. (First Am. Compl. and Jury Demand ¶ 9 [filed May 21, 2007] [hereinafter "Am. Compl."].) Plaintiff seeks injunctive relief and civil penalties under RCRA and CWA against Hecla,

Homestake, and Chevron to redress the alleged present and ongoing discharge of solid and

hazardous waste from the handling, storage, transportation, and/or disposal from the mining

operations of Hecla, Homestake, and Chevron, without a permit, that may present an imminent

and substantial endangerment to human health and the environment, including surface and ground

water and surface and subsurface soils in the Willow Creek Mining District located in Creede,

Colorado. (*Id*. at ¶¶ 2–4.) Additionally, Plaintiff asserts tort law claims against Hecla and Poxson

for damages sustained by Plaintiff resulting from a washout from their mine site. (*Id*. at ¶ 5).

### b. *The Willow Creek Watershed*

Willow Creek is a tributary of the Rio Grande River which flows through Creede. (*Id*. at

¶ 20.) The city of Creede and part of the historic Creede Mining District are located within the

Willow Creek watershed. (Joint Mot. to Dismiss by Defs. Hecla Mining Co., Homestake Mining

Co. of Cal., Chevron USA, Inc., Ex. A–6 at 2 [8/30/07 Fact Sheet] [filed Nov. 21, 2007]

[hereinafter "Defs.' Juris. Br."].)[1]

Historically, the mining of silver, lead and zinc provided economic viability to the area in

and around the Creede Mining District. (Defs.' Juris. Br.. Ex. A–6 at 2–3 [8/30/07 Fact Sheet].)

The mining activity resulted in contaminated water discharging into the Willow Creek drainage

and in mine waste piles accumulating in the watershed. (*Id*.)

---

[1] Plaintiff does not challenge the authenticity of the exhibits attached to Hecla, Homestake
and Chevron's Joint Motion to Dismiss. The court has relied upon certain evidence extraneous to
the complaint, *i.e.*, documents attached to parties' briefs in support of and opposition to
Defendants' joint motion to dismiss, in compiling the facts in this case. I discuss this matter
further below. (*See Analysis* § 1a, *infra.*)

Plaintiff alleges that Hecla, Homestake, Chevron, and Poxson are liable for release/discharge of waste/pollutants from the following locations in the Willow Creek watershed: the Park Regent Mine (Hecla), Happy Thought Mine (Hecla), Amethyst Mine (Hecla, Chevron), Last Chance Mine (Hecla, Chevron), Bachelor Mine (Hecla), Humphreys Mill (Hecla), Commodore Mine (Hecla, Poxson), Nelson Tunnel (Hecla, Homestake, Chevron), Equity Mine at the Bulldog Mine (Homestake), Phoenix Park Mill (Homestake), Phoenix Park Mine (Homestake), Holy Moses Mine (Homestake), Solomon Mine (Homestake), and Emperius Tailing Pile (Hecla, Chevron). (Am. Compl. ¶¶ 24–27.)

### c. The Environmental Protection Agency's Reclamation Strategy

#### i. The Statutory Regulations

In 1999, "based on a strong desire to find cleanup mechanisms for Creede and the Willow Creek watershed, residents of the town of Creede and the surrounding portion of Mineral County developed a community-based effort to identify and address the most pressing environmental concerns in the Willow Creek watershed." (Defs.' Juris. Br. Ex. A–6 at 3 [8/30/07 Fact Sheet].) These residents formed the "Willow Creek Reclamation Committee ("WCRC"), which has partnered with numerous state and federal agencies, including the United States Environmental Protection Agency ("EPA"), the United States Forest Service ("USFS"), the Colorado Department of Natural Resources ("CDNR"), Colorado Department of Public Health and Environment ("CDPHE"), and the Natural Resource Conservation Service ("NRCS"). (*Id.*) These partnerships allowed the WCRC to accomplish many projects in the watershed, including assessments, cleanup, and reclamation of much of the mining district." (*Id.*)

Both RCRA and the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")[2] address hazards to the environment. *See generally* 42 U.S.C. §§ 9601–9675, 6901–7000. CERCLA, however, is a more comprehensive statute. "Hazardous substances" under CERCLA encompass not only those wastes deemed "hazardous wastes" by RCRA but also other toxic pollutants regulated by the CWA, Clean Air Act ("CAA"), and the Toxic Substance Control Act ("TSCA"). *See* 42 U.S.C. § 9601(14); *United States v. Wedzeb Enterprises, Inc.*, 844 F. Supp. 1328, 1334 (S.D. Ind. 1994).[3]

CERCLA sets forth a comprehensive scheme for the cleanup of hazardous waste sites. As part of that scheme, section 104 of the Act gives the EPA the authority to undertake response actions where there is a release or threatened release of hazardous substances. 42 U.S.C. § 9604.

Response actions fall into two categories: removal actions, which include actions to study and clean up contamination, and remedial actions, which are "those actions consistent with permanent remedy taken instead of or in addition to removal actions." 42 U.S.C. §§ 9601(23), 9601(24). "Removal actions" are defined broadly to include not only the cleanup and removal but also the undertaking of studies, investigations, testing, and other information gathering activities "to identify the existence and extent of the release or threat thereof, the source and nature of the

---

[2] CERCLA is also known as Superfund. Pub. L. No. 96-510, 94 Stat. 2767 (1980), as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) (codified at 42 U.S.C. §§ 9601–75). The EPA is the delegatee of the Presidents' authority under CERCLA. *See* 42 U.S.C. § 9615.

[3] *See also* CERCLA: The Hazardous Waste Cleanup Program, Mar. 25, 2008, http://www.epa.gov/epaoswer/general/orientat/rom62.pdf.

hazardous substances, pollutants or contaminants involved, and the extent of danger to the public health or welfare or to the environment." *APWU v. Potter*, 343 F.3d 619, 624 (2nd Cir. 2003) (citing 42 U.S.C. §§ 9604[b], 9601[23]).

Planned removal actions are typically documented in an "Action Memorandum." *See* 40 C.F.R.§§ 300.800, 300.810. On the basis of its feasibility study, the EPA proposes the selected remedy, after which there follows a period for public comment. *Id.*, § 300.800. The cleanup plan is then finalized and the EPA's remedy decision is documented in a record of decision. *Id.*

The core of CERCLA cleanup program is the National Contingency Plan ("NCP"), 40 C.F.R. Part 300, which specifies the roles of the federal and state governments in responding to hazardous waste sites and establishes the procedures for making cleanup decisions. *See generally* 40 C.F.R. Part 300. The NCP, provides that once a hazardous waste site is identified, it should be evaluated to determine whether remedial action is required. *See* 40 C.F.R.§ 300.420 This evaluation involves an intensive remedial investigation/feasibility study that identifies possible remedial alternatives. *See id.* §§ 300.120; 300.430; *United States v. City & County of Denver*, 100 F.3d 1509, 1511 (10th Cir. 1996).

CERCLA authorizes the EPA to issue orders requiring potentially responsible parties ("PRPs") to clean up hazardous waste sites. *See* 42 U.S.C. § 9606(a). PRPs are defined to include current and past owners of the site, as well as the owners and transporters of the waste held at the site. *Id.* §§ 9604, 9607(a). The EPA may also conduct its own cleanup and then seek contribution from PRPs. *Id* § 9604. Waste sites subject to CERCLA include virtually any place where hazardous substances are located. *Id.* If a site is listed on the National Priorities List

("NPL") under 42 U.S.C. § 9605(a)(8)(B), it becomes subject to EPA-funded cleanup activity.

   *ii. The Environmental Protection Agency's Actions*

   On September 1, 2003, the EPA issued an Action Memorandum (hereinafter "9/1/03 Action Memo") documenting its approval of a removal action as part of the "Willow Creek Waste Reclamation Project" in Mineral County, Colorado. (Defs.' Joint Mtn to Dismiss, Ex. A–1 [9/1/03 Action Memo].) The 9/1/03 Action Memo approved a "Project Implementation Plan" (hereinafter "9/1/03 PIP") that provided additional details on the removal action. (*Id.*, Ex. A–1 at 10 [9/1/03 PIP].) Together, the 9/1/03 Action Memo and 9/1/03 PIP outlined the first phase of the EPA's program to investigate, assess, and remove or remediate sources of metals contamination within the Willow Creek watershed. (*Id.*) The 9/1/03 PIP specifically called for follow-up monitoring to determine the efficacy of cleanup actions at the Gormax Mine and other mine and mill sites along the East Willow Creek. (*Id.*, Ex. A–2 at 6 [9/1/03 PIP].)

   On August 30, 2007, the EPA and CDPHE, in compliance with CERCLA regulations, held an open house and made available for public comment a Fact Sheet (hereinafter "8/30/07 Fact Sheet") to inform the community about the potential for listing the Nelson Tunnel/Commodore Waste Rock Pile on the NPL. (Defs.' Juris. Br., Ex. A–6 at 3 [8/30/07 Fact Sheet].) The EPA's 8/30/07 Fact Sheet explained that "from 1999 through 2003, the WCRC studied heavy metals contamination and aquatic resources within the watershed." (*Id.*, Ex. A–6 at 3 [8/30/07 Fact Sheet].) The 8/30/07 Fact Sheet also identified drainage from the Nelson Tunnel as the largest source of heavy metals in Willow Creek. (*Id.*) The EPA identified the cleanup of the Nelson Tunnel and Commodore Waste Rock Pile as one of the key elements in successfully restoring the

Willow Creek aquatic and riparian habitat.  (*Id.*)

Due to the potential of the Commodore Waste Rock Pile to contaminate Creede, the EPA planned to stabilize the pile and redesign drainage around it.  (*Id.*)  The EPA "believes that including this pile in the NPL will ensure long-term stabilization of the drainage."  (*Id*.)  Further, the EPA has stated that if necessary it would make funding available to do additional work to assure permanent stabilization.  (*Id.*)

The EPA's 8/30/07 Fact Sheet further explains that the groups involved in cleaning up the Willow Creek watershed cannot move forward with the other watershed restoration projects below the Nelson Tunnel/Commodore Waste Rock Pile and below Creede until the significant problem caused by the Nelson Tunnel and Commodore Waste Rock Pile is addressed.  (*Id.*)  On July 3, 2007, the EPA obtained access to the Commodore Waste Rock pile to perform a CERCLA removal action, including field investigations and sampling of the waste rock pile.  (*Id*., Ex. A–4 [Consent for Access to Property].)

After obtaining site access from the Nelson Tunnel and Commodore sites, the EPA issued a series of "Technical Direction Documents" to its contractors for preparing plans for site assessment, health and safety, and investigative field work to characterize the Commodore Waste Rock Pile and to evaluate alternate measures to isolate the pile from West Willow Creek.  (*Id*., Ex. A–7 [Technical Direction Document].)  The EPA also produced a public document that outlined the "next steps/time line" for CERCLA response actions at the Nelson/Commodore sites. (*Id*., Ex. A–8 [Next Steps/Time-Line Nelson Tunnel/Commodore Waste Rock Pile].)

By letter dated January 14, 2008, Colorado Governor Ritter advised the EPA that he

supports the NPL listing of both the Nelson Tunnel and the Commodore Mine Waste Rock Pile. (Defs.' Reply in Support of Their Joint Mot. to Dismiss [filed Jan. 25, 2008] [hereinafter "Defs.' Reply Br."], Ex. D–1 at 1 [Governor Ritter's Approval].)  Finally, on March 19, 2008, the EPA proposed the Nelson Tunnel and Commodore Waste Rock sites for listing on the NPL and published a notice of that proposed listing in the Federal Register.  (Defs.' Notice of Supplemental Authority in Supp. of Joint Mot. to Dismiss and Submission of EPA's Proposed Listing of Sites on the NPL, Ex. A [the EPA's Proposed Listing] [filed March 20, 2008] [hereinafter "Defs.' Supplemental Authority"].)

**2.    *Procedural History***

This is the second action Plaintiff has brought in this court against Defendants Hecla, Homestake, and Chevron.  (*See Wason Ranch Corp. v. Hecla Mining Corp., et al.*, No. 05-cv-00838, Complaint [Dkt. No.1] [filed May 6, 2005][hereinafter "Wason I"].).  In both actions Plaintiff's federal claims are based on alleged violations of RCRA and CWA.  (Am. Compl. ¶¶ 45–74.)  Both RCRA and CWA authorize citizen lawsuits against defendants alleged to be in violation thereof, *see* 42 U.S.C. § 6972(a), 33 U.S.C. § 1365(a)(1), but only when the plaintiffs have given proper notice of the alleged violation to the defendants, the EPA, and the state in which the alleged RCRA and CWA violations have occurred, *see* 42 U.S.C. § 6972(b)(2)(a), 33 U.S.C. § 1365(b)(1)(A).  Plaintiff first attempted to send Defendants the required notice on October 13, 2003, and it first filed suit on May 5, 2005, before Judge Walker D. Miller, who referred the case to Magistrate Judge Patricia A. Coan for pretrial case management.  (Wason I, Oct. 19, 2005 Order of Reference [Dkt. No. 7] [filed Oct. 19, 2005].).  Plaintiff argued that the October 13 letter

was the notice required prior to filing suit in federal court under both RCRA and CWA. (*Id.*, Recommendation of U. S. Magistrate Judge at 2 [Dkt. No.70] [filed May 9, 2006] [hereinafter "5/9/08 Order"].) Defendants challenged the sufficiency of Plaintiff's October 13 notice letter, arguing that the letter did not comply with applicable regulations and that, as a result, the court lacked subject-matter jurisdiction. (*Id.*) On April 12, 2006, Plaintiff filed a Notice of Supplemental Information accompanied by a second notice letter stating that "the statutory 90-day nonadversarial period triggered by the second [n]otice [l]etter" would elapse on June 15, 2006, when this matter was likely still to be pending, and would serve as the basis for the amended complaint Plaintiff intended to file after the running of the nonadversarial period. (*Id.*) On May 9, 2006, Magistrate Judge Coan issued her recommendation that the court had no jurisdiction because Plaintiff's notice letters were insufficient under 33 U.S.C. § 1365. (*Id.*) On June 5, 2006, Plaintiff filed its notice of voluntary dismissal of case without prejudice. (*Id.* Pl.'s Notice of Voluntary Dismissal Without Prejudice [Dkt. No. 77] [filed June 5, 2006].) On June 12, 2006, Judge Miller dismissed Plaintiff's initial action without prejudice, ordering each party to pay its own costs and attorneys' fees. (*Id.* Notice of Dismissal [Dkt. No. 78] [filed June 12, 2006].)

Plaintiff then sent a third round of notice letters to Defendants on September 28, 2006, and then filed this suit on February 6, 2007. (Compl. and Jury Demand [filed Feb. 6, 2007] [hereinafter "Compl."].) A copy of the September 28, 2006 letter is attached to the Complaint as Exhibit 1. (*Id.*, Ex. 1 [9/28/06 Notice Letter].) The February 6, 2007 complaint repeated the federal claims against Hecla, Homestake, and Chevron asserted in Plaintiff's prior complaint. (*See id.*) On May 21, 2007, Plaintiff amended the complaint adding a new defendant, Poxson, and the state tort

claims.  (*See* Am. Compl.)

In its amended complaint, Plaintiff asserted the following claims based on water

contamination and various other allegations: (1) injunctive relief pursuant to 42 U.S.C. §

7002(a)(1)(B) against Hecla, Homestake, and Chevron; (2) injunctive relief pursuant to 33 U.S.C.

§ 505 against Hecla and Homestake; (3) civil penalties under 42 U.S.C. § 6972(a)(1)(B) and §

6928(a) and (g) against Hecla, Homestake and Chevron; (4) costs of litigation under 42 U.S.C. §

7002(e), 42 U.S.C. § 6972(e), 33 U.S.C. § 505(d), and 33 U.S.C. § 1365(d) against Hecla,

Homestake, and Chevron; (5) trespass against Hecla and Poxson; (6) nuisance against Hecla and

Poxson; (7) negligence against Hecla and Poxson; (8) absolute or strict liability against Hecla and

Poxson; (9) negligence per se against Hecla and Poxson.  (*See id*.)

The parties then filed a flurry of  motions.  On November 21, 2007, Hecla, Homestake, and

Chevron filed their joint motion to dismiss for lack of subject-matter jurisdiction under 42 U.S.C. §

9613(h), arguing that the EPA's ongoing response action in Willow Creek watershed bars

Plaintiff's claims.  (Defs.' Juris. Br..)  On January 10, 2008, Plaintiff responded.  (Pl.'s Resp. to

Joint Mot. to Dismiss [filed Jan. 10, 2008] [hereinafter "Pl.'s Juris. Resp."].)  On January 25,

2008, Defendants Hecla, Homestake, and Chevron replied.  (Defs.' Juris. Reply)

On March 12, 2007, Hecla filed its motion for attorneys' fees and stay of proceedings

pursuant to Federal Rule of Civil Procedure 41(d).  (Def. Hecla Mining Co.'s Mot. for Costs,

Including Att'y Fees, and for Stay of Proceedings Pursuant to Fed. R. Civ. P. 41[d] [filed Mar. 12,

2007] [hereinafter "Hecla's Fees Br."].)  On April 4, 2007, Plaintiff responded.  (Pl.'s Resp. in

Opp. to Hecla Mining Co.'s Mot. for Costs, Including Att'y Fees, and for Stay of Proceedings

Pursuant to Fed. R. Civ. P. 41[d] [filed Apr. 4, 2007] [hereinafter "Pl.'s Fees Resp."].) On April 19, 2007, Hecla replied. (Hecla Mining Co.'s Reply in Supp. of its Mot. for Costs, Including Att'y Fees, and for Stay of Proceedings Pursuant to Fed. R. Civ. P. 41[d] [filed Apr. 19, 2007] [hereinafter "Hecla's Fees Reply].)

On April 13, 2007, Chevron filed a similar motion for attorneys' fees. (Mot. for Costs, Including Att'y Fees, Pursuant to Fed. R. Civ. P. 41[d] [filed Apr. 13, 2007] [hereinafter "Chevron's Fees Br."].) On May 11, 2007, Plaintiff responded. (Pl.'s Resp. in Opp. to Defendant Chevron USA, Inc.'s Mot. for Costs, Including Att'y Fees, Pursuant to Fed. R. Civ. P. 41[d] [filed May 11, 2007] [hereinafter "Pl.'s Fees Resp."].) On May 29, 2007, Chevron replied. (Def. Chevron USA, Inc.'s Reply in Supp. of its Mot. for Costs, Including Att'y Fees, Pursuant to Fed. R. Civ. P. 41[d] [filed May 29, 2007] [hereinafter "Chevron's Fees Reply"].)

On April 12 and 13, 2007, Hecla, Homestake, and Chevron filed their motions to dismiss for failure to comply with pre-suit notice provisions of 42 U.S.C. § 6972(b), 33 U.S.C. § 1365(b). (Def. Hecla Mining Co.'s Mot. to Dismiss [filed Apr. 12, 2007]; Def. Homestake Mining Co. of Cal.'s Mot. to Dismiss [filed Apr. 12, 2007]; Def. Chevron USA, Inc.'s Mot. to Dismiss for Lack of Subject-matter Jurisdiction Pursuant to Fed. R. Civ. P. 12 [b][1] [filed Apr. 13, 2007].)

On June 13, 2007, Hecla filed its motion to dismiss the state law claims. (Def. Hecla Mining Co.'s Mot. to Dismiss State Law Claims and to Strike Request for Exemplary Damages Alleged in Plaintiff's First Am. Compl. [filed June 13, 2007] [hereinafter "Hecla's Mot. to Dismiss State Law Claims"].) On July 27, 2007, Poxson filed his motion to dismiss. (Def. Ty Poxson's Mot. to Dismiss First Am. Compl. [filed July 27, 2007 ].)

On July 31, 2007 and August 13, 2007, Hecla and Homestake filed their motions to dismiss for failure to join necessary and indispensable parties. (Def. Hecla Mining Co.'s Mot. to Dismiss for Failure to Join Necessary and Indispensable Parties Pursuant to Fed. R. Civ. P. 12 [b][7] [filed July 31, 2007]; Def. Homestake's Joinder and Mot. to Dismiss for Failure to Join Necessary and Indispensable Parties [filed Aug. 13, 2007].)

Finally, on March 24, 2008, Plaintiff filed a motion for preliminary injunction. (Pl.'s Mot. for Prelim. Inj. to Abate Imminent and Substantial Endangerment to Human Health and the Environment [filed March 24, 2008].) All motions, except Plaintiff's motion for preliminary injunction, are fully briefed.

## ANALYSIS

I first address Hecla, Homestake, and Chevron's joint motion to dismiss for lack of jurisdiction under 42 U.S.C. § 9613(h) and then move on to Hecla and Homestake's motions for costs, including attorney fees. Given my determination with respect to the joint motion to dismiss, I need not consider the other pending motions.

### 1. *Legal Standard*

### a. *Rule 12(b)(1) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(1) provides that a Defendant may move the court to dismiss the claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1) (2008). The Tenth Circuit has explained that:

> [m]otions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject

> matter jurisdiction, thereby questioning the sufficiency of the
> complaint. In addressing a facial attack, the district court must
> accept the allegations in the complaint as true. Second, a party may
> go beyond allegations contained in the complaint and challenge the
> facts upon which subject matter jurisdiction depends. In addressing
> a factual attack, the court does not presume the truthfulness of the
> complaint's factual allegations, but has wide discretion to allow
> affidavits, other documents, and a limited evidentiary hearing to
> resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quoting *Holt v. United States.*, 46 F.3d 1000, 1003 [10th Cir. 1995] [further citations omitted]). When a defendant challenges subject-matter jurisdiction, the plaintiff must establish such jurisdiction by a preponderance of the evidence. *Southway v. Central Bank of Nigeria*, 328 F.3d 1267, 1272 (10th Cir. 2003).

Unlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(1) "can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). There is, however, a widely-recognized exception to this rule. "If the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56." *Id.* The jurisdictional claim and the merits are considered to be intertwined when subject-matter jurisdiction is dependent upon the same statute that provides the substantive claim in the case. *Id.* at 260. Under these circumstances when extraneous evidence is submitted in the form of affidavits by both parties, it is appropriate for the court to convert the motion to a Rule 56 motion for summary judgment. *Id.*

Although the Tenth Circuit ordinarily requires notice from the court of its intent to convert to Rule 56 to prevent "unfair surprise," it makes an exception for cases in which parties submit

material beyond the pleadings. *Id.* "Failure to give notice is not reversible error if a party does not attempt to exclude the supporting documents, but files its own sworn affidavits in response." *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986) (further citations omitted). "Where a party has responded in kind to the movant's attempt to convert the motion, that party cannot later claim unfair surprise." *Id.*

I find that the jurisdictional question raised by Hecla, Homestake, and Chevron is intertwined with the merits of the case because subject-matter jurisdiction over Plaintiff's federal claims is dependent upon the same statute that provides the substantive claim in this case, *i.e.*, RCRA. *See* 42 U.S.C. §§ 9613(h), 6901–7000. And because all parties have submitted affidavits and material beyond the pleadings in support of and in opposition to the Hecla, Homestake, and Chevron's joint motion to dismiss, I treat the joint motion as one for summary judgment under Rule 56. (*See, e.g.,* Defs.' Juris. Br., Ex. A–1 through A–8; Pl's Juris. Resp. Ex. 1, 2, App. 1–6.)

### b. *Rule 56 Motion for Summary Judgment*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to

demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e)(2). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## 2.    *Evaluation of Claims*

### a.    *Subject-matter Jurisdiction Under 42 U.S.C. § 9613(h)*

Hecla, Homestake, and Chevron (hereinafter "Defendants") claim that this court does not have subject-matter jurisdiction over Plaintiff's claims for injunctive relief and civil penalties. (Defs.' Juris. Br. at 1.) Specifically, Defendants argue that addressing Plaintiff's claims at this point would be a challenge to and interfere with the implementation of the EPA's action and section 113(h) of RCRA divests this court of jurisdiction because the EPA is in the midst of an ongoing CERCLA response action. (*Id.* at 2, 8; Defs.' Juris. Reply at 9.)

Plaintiff responds by arguing that: (1) the EPA is not performing an ongoing response

action in all sites subject to Plaintiff's Amended Complaint; (2) even if there were an ongoing EPA response action, Plaintiff's claims for injunctive relief do not constitute a challenge to the response action under section 113(h); and (3) even if the claims for injunctive relief constitute such a challenge, the claim for civil penalties based on Defendants' alleged violation of RCRA and CWA does not constitute a challenge.  (*See* Pl.'s Juris. Resp. at 1–3, 18.)

The essential facts of this case are uncontested.  Because Plaintiff's claims and Defendants' argument for lack of subject-matter jurisdiction both arise under RCRA, I start the analysis of the case by addressing the relevant sections of the statute.

### i.    *The Section 113(h) Jurisdictional Bar*

In 1986, Congress amended RCRA by adding section 113(h), codified at 42 U.S.C. § 113(h) which, with five enumerated exceptions, denies federal courts jurisdiction to hear challenges to both removal and remedial actions taken under CERCLA until those actions are complete.  *See* Superfund Amendments and Regulations Act of 1986, Pub. L. No. 99-499, § 113(h), 100 Stat. § 1613 (1986) (furthering goals of CERCLA by preventing delays of removal and remedial action); *City & County of Denver*, 100 F.3d at 1511 (stating that "no federal court shall have jurisdiction to review any challenges to removal or remedial action selected by the EPA under §§ 9604 or 9606[a].").  The underlying rationale is that a lawsuit has the effect of slowing down or preventing cleanup activities and thus constitutes a "challenge" to the cleanup.  *See United States v. State of Colorado*, 990 F.2d 1565, 1576 (10th Cir. 1993) (stating that section 113[h] was enacted "to prevent private responsible parties from filing dilatory, interim lawsuits which have the effect of slowing down or preventing the EPA's cleanup activities") (quotation

omitted).  In relevant part, section 113(h), entitled "timing of review," provides that:

> [n]o Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title . . . [except in certain enumerated circumstances].

42 U.S.C. § 9613(h)(1)–(5).[4]  Defendants argue that section 113(h) divests this court of jurisdiction because the EPA is conducting a response action in Willow Creek.  (*See* Defs.' Juris. Br. at 2.)  Plaintiff does not assert that its claims fit within any of the statutory exceptions to the section 113(h) bar but instead contends that section 113(h) does not apply because: (1) the EPA's actions do not constitute an ongoing response action; (2) its complaint is not a "challenge" to the EPA cleanup within the meaning of section 113(h); and (3) section 113(h) does not bar suits for civil penalties.  (*See* Pl.'s Juris. Resp. at 1–3, 18.)

### ii.    *Ongoing Response Action by the EPA*

Plaintiff first attempts to circumvent the section 113(h) bar by insisting that there is no ongoing EPA response action "at any of the mine sites that are subject of plaintiff's first, second and third Claims for Relief" because: (1) "short-term environmental response activities occurred at a number of sites but there is no evidence of ongoing CERCLA removal or remedial action at these sites,"  (Pl.'s Resp. Br. at 3); (2) none of these sites has been listed on the NPL and there is no Administrative Order of Consent or other administrative order under which EPA has mandated

---

[4] According to this section the time of filing the complaint is irrelevant, as long as there is an ongoing EPA response action at the time of review.

response action pursuant to CERCLA, (*id*. at 7–9, Ex. 1 [Superfund Site Information attached to Aff. of Mr. Ganz in supp. of Pl.'s Juris. Resp.]); and (3) the response activities described in the 9/1/03 Action Memo and the 9/1/03 PIP were to be funded under the CWA, which means that the response activities were not part of a removal or remedial action conducted pursuant to 42 U.S.C. § 9604, so the jurisdictional bar of section 113(h) cannot apply, (*id*. at 11). I consider each argument in turn.

First, Plaintiff contends that there is no evidence of ongoing CERCLA removal or remedial action at the sites subject to this lawsuit. (*Id*. at 3.) Defendants respond that "[i]n light of EPA's actions throughout the Willow Creek watershed, including all three major tributaries of Willow Creek, it is absurd for Plaintiff to contend that EPA is not conducting CERCLA response actions within the Willow Creek watershed." (Defs.' Reply Br. at 7.) I agree with Defendants.

As I mentioned before, response actions fall into two categories: removal actions and remedial actions. Remedial actions are "those actions consistent with permanent remedy taken instead of or in addition to removal actions." 42 U.S.C. §§ 9601(23), (24). "Removal actions" are authorized under section 104 of CERCLA, 42 U.S.C. § 9604, and are broadly defined to include:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary . . . *to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material*, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment . . . .

*Id*. § 9601(23) (emphasis added).

In this case, the 9/1/03 Action Memo and the 9/1/03 PIP outlined the first phase of the

EPA's program to investigate, assess and remove or remediate sources of metals contamination within the Willow Creek watershed. (Defs.' Joint Mtn to Dismiss, Ex. A–1 [9/1/03 Action Memo].) Therefore, I find that the 9/1/03 Action Memo and PIP constitute a response action within the meaning of CERCLA, 42 U.S.C. §§ 9604, 9601(23).

Moreover, CERCLA and the NCP include post-removal monitoring and site control within the definition of removal action. *Id*. § 9601(23); 40 C.F.R. § 300.5. Post-removal monitoring is necessary to meet the NCP requirement that the EPA shall ensure an orderly transition from removal to remedial response activities in the event removal action will not fully address the threat posed by the release. 40 C.F.R. § 300.415(g).

In this case, the 9/1/03 PIP calls for follow-up monitoring to determine the efficacy of cleanup actions at the Gormax Mine and other mine and mill sites along East Willow and Nelson Creeks. (Defs.' Juris. Br., Ex. A–2 at 5 [PIP, Local Support].) This, too, constitutes a response action withing the meaning of CERCLA.

Moreover, consistent with its goal to clean up the Willow Creek watershed, the EPA planned to include the Commodore Waste Rock Pile in the NPL to ensure long-term stabilization of the drainage. (Defs.' Juris. Br., Ex. A–6 at 3 [8/30/07 Fact Sheet].) Accordingly, the EPA obtained access to the Commodore Mine Waste Rock Pile pursuant to 42 U.S.C. § 9606 to perform a CERCLA removal action, including field investigations and sampling of the waste rock pile, (*see* Defs.' Juris. Br., Ex. A–4 [Consent for Access to Property]) and proposed the Nelson Tunnel and Commodore Waste Rock sites for listing on the NPL (*see* Defs.' Supplemental Authority, Ex. A [the EPA's Proposed Listing]), all of which constitute response actions under

CERCLA, 42 U.S.C. §§ 9606, 9601(23).

Plaintiff also contends that the EPA's actions throughout the Willow Creek watershed do not constitute response actions within the meaning of section 113(h) because they were short-term environmental response activities that occurred at a number of sites and not all sites enumerated in Amended Complaint. (Pl.'s Juris. Resp. at 3.) Again, I disagree.

The evidence of the EPA's action during the past eight years indicates that all sites enumerated in the amended complaint are located in the EPA's cleanup target area, *i.e.*, the Willow Creek watershed. (Defs.' Juris. Br., Ex. A–6 [8/30/07 Fact Sheet].) EPA has already addressed the Phoenix Park Mill Tailings, Gormax Mine, Phoenix Mine, Midwest Mine, and Park Regent Mine. (*Id.,* Ex. A–1 [9/1/03 Action Memo].) Moreover, as the EPA's 8/30/07 Fact Sheet explains, the groups involved in cleaning up the Willow Creek watershed cannot move forward with the other watershed restoration projects below the Nelson Tunnel/Commodore Waste Rock Pile and below Creede until the significant problem caused by the Nelson Tunnel and Commodore Waste Rock Pile is addressed. (*Id.*, Ex. A–6 at 3 [8/3/07 Fact Sheet].)

Additionally, the 8/30/07 Fact Sheet is uncontested evidence of the EPA's ongoing response action in the Willow Creek watershed and Plaintiff has not introduced any evidence that could suggest the EPA's actions are mere short-term environmental response activities. And according to law, "the statute does not say 'a remedial action,' or 'a stage of a remedial plan.' Instead, it calls flatly for restraint from suit when 'remedial action' (period) remains to be done." *Frey v. PA*, 270 F.3d 1129, 1134 (7th Cir. 2001); *see also New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1249 (10th Cir. 2006) (holding that pursuant to section 113[h], challenges to the

EPA's removal and/or remedial activities are precluded until such activities are completed); *Aztec Minerals Corp. v. EPA*, Civ. No. 98-1380, 1999 WL 969270, at *3 (10th Cir. Oct. 25, 1999) (stating the "clear import" of section 113[h] is that challenges to the EPA's removal or remedial activities are "precluded until such activities are completed"). Therefore, based on uncontested evidence, I find that all mine sites in the Willow Creek watershed are subject to the EPA's ongoing response action.

Second, Plaintiff argues that the EPA has not taken any response action in this case because none of the mine sites have been listed in the NPL.[5] (Pl.'s Resp. Br. at 3.) I disagree.

The NCP makes it clear that CERCLA removal actions are not predicated on NPL listing:

> [a]t any release, regardless of whether the site is included on the NPL, where the lead agency makes the determination, based on the factors in paragraph (b)(2) of this section, that there is a threat to public health or welfare of the United States or the environment, the lead agency *may* take any appropriate removal action to abate, prevent, minimize, stabilize, mitigate, or eliminate the release or the threat of release.

40 C.F.R. § 300.415(b)(1).

Moreover, on March 19, 2008, the EPA proposed the Nelson Tunnel and Commodore Waste Rock sites for listing on the NPL and published a notice of that proposed listing in the Federal Register. (Defs.' Supplemental Authority, Ex. A [the EPA's Proposed Listing].) Therefore, Plaintiff's argument lacks merit.

Third, although Plaintiff admits that the 9/1/03 Action Memo is written in the NCP-

---

[5] Plaintiff's response brief was filed before the EPA proposed the Nelson Tunnel and Commodore Waste Rock sites for listing on the NPL. (*See* Pl.'s Juris. Resp. [filed Jan. 10, 2008], Defs.' Supplemental Authority, Ex. A [the EPA's Proposed Listing] [filed Mar. 20, 2008].)

prescribed Action Memo format to establish that the proposed action is consistent with the NCP requirements for a CERCLA Removal Action, it argues that because the response activities described in the 9/1/03 Action Memo and the 9/1/03 PIP were to be funded under the CWA, the response activities were not part of a removal or remedial action conducted pursuant to § 9604. (Pl.'s Juris. Resp. at 11.)  Therefore, argues Plaintiff, the jurisdictional bar of section 113(h) cannot apply.  (*Id*.). Again, Plaintiff's argument lacks merit because the NCP recognizes that the "EPA may also pursue other appropriate authorities to remedy the release [of hazardous waste], including enforcement actions under CERCLA and other laws."  40 C.F.R. § 300.425(b)(2) (2008).[6]

Based on the forgoing, I find that the EPA is conducting an ongoing response action in Willow Creek watershed.

### iii.    Challenge to the EPA's Remedial Plan

Plaintiff then attempts to circumvent the section 113(h) bar by insisting that its complaint does not really "challenge" the EPA's remedial plan for Willow Creek watershed because "no aspect of the relief sought by Plaintiff in this action interferes with ongoing EPA cleanup."  (Pl.'s Resp. Br. at 3–4.)  Again, I disagree.

_____

[6] Inclusion of a release on the NPL does not imply that monies will be expended, nor does the rank of a release on the NPL establish the precise priorities for the allocation of Fund resources.  40 C.F.R. § 300.425(b)(2).  The EPA may also pursue other appropriate authorities to remedy the release, including enforcement actions under CERCLA and other laws.  *Id*.  A site's rank on the NPL serves, along with other factors, including enforcement actions, as a basis to guide the allocation of Fund resources among releases.  *Id*.

A suit challenges a remedial action within the meaning of section 113(h) if it interferes with the implementation of a CERCLA remedy. *See Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675 (8th Cir. 1998). To determine whether a suit interferes with, and thus challenges, a cleanup, courts look to see if the relief requested will impact the remedial action selected. For example, in *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 329–30 (9th Cir. 1995), the court, in holding that the plaintiffs' citizen suit claims under RCRA and CWA were barred by section 113(h), held that vindication of those claims would create "new requirements for dealing with the inactive sites that are now subject to the CERCLA cleanup [and] clearly interfere with the cleanup." *Id.*; *see also Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir. 1995) (finding no jurisdiction to entertain citizen suit where suit, if successful, would "dictate specific remedial actions and . . . alter the method and order for cleanup," in violation of section 113[h]); *Alabama v. EPA*, 871 F.2d 1548, 1559 (11th Cir. 1989) (holding complaint barred because it challenged the remedial action plan to the extent that it sought to enjoin the EPA from participating in the shipment of wastes from a Superfund site in Texas to Alabama and to prevent the EPA from participating in any further remedial action at the site).

Conversely, where a suit does not call into question the selected EPA remedial or removal plan, the suit is not a "challenge" under section 113(h). *See Beck v. Atlantic Richfield Co.*, 62 F.3d 1240, 1243 (9th Cir. 1995) (holding that plaintiffs' action for compensatory damages but not injunctive relief could go forward, because "resolution of the damage claim would not involve altering the terms of the cleanup order").

In this case, Plaintiff seeks an injunction requiring "thorough investigation, corrective

action and/or removal and/or remediation, and long-term continued monitoring, to abate the imminent and substantial endangerment to human health and the environment, violations RCRA and the CWA, and Plaintiff's property damage." (Am. Comp. ¶ 43.) Thus, the complaint asks the court to order "Hecla, Homestake and Chevron, to undertake all environmental assessment activities, including engineering, investigation, studies, and monitoring, necessary to evaluate fully the extent, nature, sources and causes of contamination in the Willow Creek watershed and the Creed Mining District." (*Id*. at ¶¶ 2–3.) The relief Plaintiff requests, if granted, would dictate specific remedial actions and alter the method and order for the EPA's cleanup plan for Willow Creek, in violation of section 113(h). Therefore, because the complaint in effect seeks to have the court modify or replace the remedial plan for Willow Creek, I find that it is a "challenge" to the selected remedial plan.

### iv.     *The Section113(h) Bar to Plaintiff's Claim for Civil Penalties*

Plaintiff also contends that the section 113(h) jurisdictional bar should not extend to its claim for civil penalties for violations of CWA and RCRA, 42 U.S.C. §§ 6972, 6928. (Pl.'s Resp. at 18.) Plaintiff relies on *Costner* to support this argument. The question before the court, in *Costner*, was whether plaintiff's allegations under the False Claims Act amounted to challenges to removal or remedial action that are barred by the plain language of section 113(h). 153 F.3d at 674. In that case, the EPA had hired contractors to perform the cleanup. *Id*. at 672. The plaintiff, in *Costner*, alleged fraud and sought civil penalties on behalf of the United States based on a claim that the contractors engaged in a pattern of knowingly submitting false claims for payment of the funds under their contracts. *Id*. at 675.

The court held that "the complaint does not seek to interfere with the remediation process ongoing at the site, nor is the suit 'directly related to the goals of the cleanup itself'" because "resolution of the suit in plaintiff's favor'would not involve altering the terms of the cleanup order,' but would result only in financial penalties for alleged fraud regarding payments sought and received for past completed work." *Id*.

Plaintiff generalizes *Costner*'s holding and argues that "where the claim is neither for review of nor injunction against any remedial activity at the site, but rather seeks civil penalties on behalf of the United States, resolution of the claim in favor of the plaintiff would not involve altering the terms of the cleanup order, but would result only in financial penalties." (Pl.'s Resp. at 18.)

Defendants argue that in contrast with *Costner* "Plaintiff in its First, Second and Third Claims for Relief is seeking both injunctive relief and civil penalties against Defendants, based on the same alleged violations of the same federal statutes - the CWA and RCRA." (Defs.' Reply at 10.) Thus Defendants conclude that, "Plaintiff's claim for civil penalties is inextricably related to its claims for injunctive relief and both are subject to the jurisdictional bar of CERCLA § 113(h)." (*Id*.)

Defendants also rely on *Village of DePue v. Exxon Mobil Corp*., in support of their argument that Plaintiff's claim for civil penalties is inextricably related to its claims for injunctive relief . No. 06-1266, 2007 U.S. Dist. LEXIS 35320 (C.D. Ill. May 14, 2007). In *Village of DePue*, the plaintiff municipality sought injunctive relief to enforce its nuisance ordinance at a CERCLA site. *Id*. The plaintiff further sought the imposition of daily fines until Defendants

complied with the requested injunctive relief. *Id.* The district court applied the section 113(h) bar and dismissed both claims, explaining that the fines "must reasonably be viewed in the same light as the requested injunctive relief and is a challenge to the (CERCLA) remedial action . . . ." *Id.* 2007 U.S. Dist. LEXIS 35320, at *8.

In this case, however, even though Plaintiff is seeking an injunction, its request is distinguishable from plaintiffs in *Costner* and *DePue*. In *Costner*, the determination of whether defendants had in fact submitted false claims did not have any overlap with the EPA's cleanup actions. Unlike *Costner*, as I explain below, the determination of whether Defendants have violated any requirement of RCRA overlaps with the EPA's response actions in the Willow Creek watershed. And unlike *DePue*, Plaintiff is asking for civil penalties as a remedy for Defendants' alleged violation of hazardous waste management provisions and not as a penalty for non-compliance with an injunction enforcing an ordinance.

Plaintiff, in this case, is seeking civil penalties under RCRA and CWA. (Pl.'s Am. Compl. ¶¶ 69–72.) The civil penalties provided for in RCRA may be imposed *when it is determined* that any person has violated any requirement of RCRA's sub-chapter C hazardous waste management provisions or any requirement of an authorized state hazardous waste program. 42 U.S.C. §§ 6928(a), 6928(g); *see also College Park Holdings LLC. v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1334, 1349 (N.D. Ga. 2002); *see also* 42 U.S.C. § 6928(a); *Cameron v. Peach County*, No. 5:02-CV-41-1 (CAR), GA Slip Copy, 2004 WL 5520003, at *30 (M.D. Ga. 2004). Therefore, exercise of jurisdiction to review Plaintiff's third claim for civil penalties would require this court to determine who is the responsible party for contamination of the Willow Creek

watershed, in violation of RCRA or CWA provisions.

   As I concluded earlier, the uncontested evidence shows that the EPA is taking an ongoing response action within the meaning of section 113(h), in the Willow Creek watershed. *See Analysis* § 2 a (ii) *Supra*. As a part of this ongoing response action, the EPA and the WCRC have been engaged in the study of heavy metal contamination and aquatic resources, and identification of the most pressing environmental concerns in the Willow Creek watershed. (Defs.' Mot. to Dismiss, Ex. A–6 at 3 [8/30/07 Fact Sheet].) During the past eight years, the EPA and the WCRC have made significant progress in characterizing sources of contamination and their impacts in the Willow Creek watershed. (Defs.' Juris. Reply Ex. D at 1 [Governor Ritter's Approval].) Furthermore, the EPA has been engaged in identification of PRPs for contamination of the Willow Creek watershed. (Defs.' Mot. to Dismiss, Ex. A–3 at 1–3 [Notice Letter to Poxson].)

   In the light of the forgoing, Plaintiff is asking this court to take action and determine whether Defendants are liable for contamination of the Willow Creek watershed in violation of RCRA or CWA provisions, which is the same action the EPA is in the midst of. (*See* Pl.'s Am. Compl. ¶¶ 69–71.) Therefore, this court's engagement in the same study would interfere with the EPA's remedial action because the relief sought by Plaintiff, *i.e.*, recognizing Defendants as responsible parties for contamination of Willow Creek and holding them financially responsible, if granted, would dictate selection of specific remedial action to the EPA. This result would violate section 113(h) because "challenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy." *Schalk v. Reilly*, 900 F.2d 1091, 1097 (7th Cir.

1990).

Plaintiff has not offered any explanation as to why granting the civil penalties in this case would not interfere with the ongoing clean up action in Willow Creek watershed. Instead, its argument is entirely based on its mis-reading of *Costner*. (*See* Pl.'s Juris. Resp. at 18) Plaintiff relies on *Costner* to contend that when a claim "seeks civil penalties on behalf of the United States, resolution of the claim in favor of the plaintiff would not involve altering the terms of the cleanup order, but would results only in financial penalties." (*Id.*) Plaintiff, however, skips the *Costner* court's analysis and its test for determining whether the civil penalties were barred by section 113(h), *i.e.*, a claim for civil penalty constitutes a challenge to the cleanup plan when such a remedy interferes with the implementation of the cleanup. *See Costner*, 153 F.3d at 675.

Therefore, based on the uncontested evidence of the EPA's involvement in the determination of responsible sources of contamination in the Willow Creek watershed, I conclude that Plaintiff's third claim for relief constitutes a "challenge" to the selection of remedies and identification of PRPs in the EPA's ongoing cleanup action so as to invoke section 113(h) jurisdictional bar.

###### *v.* *Conclusion*

The essential facts governing my disposition (as opposed to how those facts are characterized or legal conclusions argued therefrom by the parties) are uncontested. In sum, I conclude that 42 U.S.C. § 9613(h) divests this court of jurisdiction over Plaintiff's first, second, and third claims for relief until the EPA's response action in Willow Creek watershed is completed. Having dismissed all of Plaintiff's federal claims, I exercise my discretion under to

decline supplemental jurisdiction over Plaintiff's state claims against Hecla and Poxson. *See* 28 U.S.C. § 1367(c)(3) (stating district court may decline supplemental jurisdiction "if . . . [it] has dismissed all claims over which it has original jurisdiction").

Also, in light of this decision, Plaintiff's fourth claim for costs is moot as are the following motions are moot: (1) Hecla's Motion for Stay of Proceedings Pursuant to Federal Rule of Civil Procedure 41(d); (2) Hecla, Homestake, and Chevron's motions to dismiss for failure to comply with pre-suit notice provisions of 42 U.S.C. § 6972(b) and 33 U.S.C. § 1365(b); (3) Hecla and Homestake's motions to dismiss for failure to join necessary and indispensable parties; and (4) Plaintiff's motion for preliminary injunction.

### b.      *Motion for Costs and Attorneys' fees*

On March 12, 2007, and April 13, 2007, Hecla and Chevron filed their motions for costs, including attorneys' fees pursuant to Federal Rules of Civil Procedure 41(d).  (*See* Hecla's Mot. for Fees.); (Chevron's Mot. for Fees.)

Under the language of Rule 41(d), the decision whether to impose costs and attorneys' fees is within the discretion of the trial court.  *See Meredith v. Stovall*, 216 F.3d 1087, 2000 U.S. App. LEXIS 14553, at 4* (10th Cir. 2000) (table); 8 James Wm. Moore et al., Moore's Federal Practice § 41-70(1) (3d ed. 1997) (citing cases holding that award of costs is discretionary), § 41-70(6) (citing cases holding that attorneys' fees are available under Rule 41[d]); *see generally* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2375 (2nd ed. 1992).

Federal Rule of Civil Procedure 41(d) states:

If a plaintiff who has once dismissed an action in any court commences an

> action based upon or including the same claim against the same
> Defendant, the court may make such order for the payment of costs of the
> action previously dismissed as it may deem proper and may stay the
> proceedings in the action until the plaintiff has complied with the order.

Fed. R. Civ. P. 41(d). "The purpose of the rule is to prevent the maintenance of vexatious law suits and to secure, where such suits are shown to have been brought repetitively, payment of costs for prior instances of such vexatious conduct." *Meredith,* 2000 U.S. App. LEXIS 14553, at 4* (citing *United Transp. Union v. Maine Central R.R.*, 107 F.R.D. 391, 392 (D. Me. 1985) (internal citation omitted). There is a split of authority as to whether Rule 41(d) authorizes attorneys' fees as part of an award of "costs," but the majority of courts find that attorneys' fees are available under Rule 41(d). *See Duffy v. Ford Motor Co.*, 218 F.3d 623, 632 (6th Cir. 2000).

The persuasive authority of the Tenth Circuit's unpublished opinion in *Meredith* suggests that the Tenth Circuit is in line with circuits that grant an award of attorneys' fees as part of an award of costs under Rule 41(d). *Meredith*, 2000 U.S. App. LEXIS 14553, at 4*

Although no showing of bad faith is required before costs may be imposed on the plaintiff under Rule 41(d), the plaintiff's motive in dismissing the prior action may be taken into account. *See Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 22–23 (D. Conn. 1998); *also see Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996) (quoting *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 [8th Cir. 1992]) (stating that Rule 41[d] is "intended to serve as a deterrent to forum shopping and vexatious litigation.").

As noted above, Plaintiff had once voluntarily dismissed an action based upon and including the federal claims in this case against three out of the four Defendants in this case. (*See*

Wason I.)  And even though there is no direct evidence of vexatious conduct, it appears that

Plaintiff could have been aware of the EPA's activities in Willow Creek watershed.  (*See* Pl.'s

Resp. Br.)  However, because curing its pre-suit notice letter seems to have been Plaintiff's

motive in dismissing the prior action, this time I deny Hecla and Chevron's motions for costs,

including attorneys' fees.

### 3.    *Conclusion*

Based on the foregoing it is therefore **ORDERED** that:

1.    DEFENDANTS Hecla, Homestake and Chevron's joint motion to dismiss (# 103), treated as summary judgment, is **GRANTED**.

2.    DEFENDANTS Hecla's and Poxson's motions to dismiss state law claims (## 55, 71) are **GRANTED**.

3.    DEFENDANTS Hecla's and Chevron's motions for costs including attorneys' fees (## 9,17) are **DENIED**.

4.    DEFENDANTS Hecla's, Homestake's and Chevron's motions to dismiss for lack of compliance with pre-suit provisions of RCRA and CWA (## 12, 13, 16) are **DENIED** as MOOT.

5.    DEFENDANTS Hecla's and Homestake's motions for to Dismiss for Failure to Join Necessary and Indispensable Parties (##76, 77) are **DENIED** as MOOT.

6.    PLAINTIFF'S motion for Preliminary Injunction (# 135) is **DENIED** as MOOT.

The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiff,

dismissing Plaintiff's claims without prejudice.

Dated this 31st day of March, 2008

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge